United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| W.G. HALL, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>    Defendant. | Case No. 17-cv-00646 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART ZURICH'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART WGH'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 29, 32 |

Plaintiff W.G. Hall, LLC (WGH), a staffing services company, settled a wage and hour class action lawsuit. Before and after settling the class action, WGH sought coverage from its professional liability insurer, Zurich American Insurance Company for the amount it would pay out in the settlement agreement. Zurich refused to reimburse WGH for the settlement amount on several grounds, and WGH sued Zurich for breach of contract and derivative claims.

In its motion, WGH seeks summary judgment on its claims for breach of contract and declaratory relief, as well as a judgment from the Court that none of five affirmative defenses raised by Zurich are applicable in this case. Zurich opposes WGH's motion and seeks summary judgment on its behalf as to the entire case.

For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Zurich's motion for summary judgment. WGH's motion for partial summary judgment is

Case No. 17-cv-00646 NC

also GRANTED IN PART and DENIED IN PART. The effect of this order is that Zurich is not obligated to cover WGH's settlement in the underlying litigation.

**I. BACKGROUND**

Though the interpretation of the insurance policy in this case is hotly debated, the factual background of this case is largely not. On November 27, 2013, Zurich issued to WGH an insurance coverage package effective from December 1, 2013, through May 19, 2015. Dkt. No. 29-1 at 12. That package contained Professional Liability coverage. *Id*.

WGH is a staffing services company, which hires and trains staffing services workers and furnishes them to its clients. Even when its employees are working directly for WGH's clients, WGH remains the employer of record for its employees and provides payroll services for its clients for the work its employees perform. Dkt. No. 29 at 6. In 2014 and 2015, Danny Isquierdo and Freddy Robledo filed putative class actions against WGH, which were later consolidated in July 2015 (*Isquierdo* and *Robledo* litigation). *Id*. at 210.

These lawsuits alleged California Labor Code and Industrial Welfare Commission Wage Order violations for failure to pay wages, and other related claims arising from the failure to pay, such as failure to reimburse and a claim under the California Unfair Competition Act. *Id*. at 210-36. The alleged actions giving rise to these claims were that WGH failed to compensate its employees "for internal orientations, client orientations, reporting and consultations, post-assignment termination meetings, client interviews, related travel and other work off the clock . . . ." *Id*. at 216. In addition, the plaintiffs claimed WGH did not pay them for the time they spent traveling to deliver their timesheets to its office, nor were they reimbursed for their mileage. *Id*. at 217. WGH notified Zurich of the lawsuits against it, but Zurich refused to assume coverage over the claims. *Id*. at 332-37, 342-46, 351-55. WGH and the class reached a settlement, and the court preliminarily approved the class action settlement. *Id*. at 277. Both parties agree that WGH reach a settlement without Zurich's consent.

WGH filed this case on February 6, 2017, alleging claims for (1) breach of contract,

Case No. 17-cv-00646 NC    2

(2) breach of contract/duty to defend, (3) breach of the implied covenant of good faith and fair dealing, and (4) declaratory relief. Dkt. No. 1. WGH moved for summary judgment on May 25, 2017. Dkt. No. 29. Zurich filed a cross motion for summary judgment on June 23, 2017. Dkt. No. 32. Both parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 8, 15.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

## III. DISCUSSION

The issues raised in both motions are (1) was there a "wrongful act" within the meaning of the policy; (2) whether the insured v. insured exclusion applies; (3) whether Zurich waived its right to object to WGH's settlement of the underlying litigation; (4)

Case No. 17-cv-00646 NC 3

whether the contract exclusion applies; and (5) whether the settlement constitutes damages. In addition, Zurich argues that as to the legal issues, there is no dispute of material fact, necessitating a grant of summary judgment.

### A. Insurance Contract Interpretation Under California Law

Insurance policies are contracts. *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990). The "mutual intention" of the parties at the time of contract formation governs the contract's interpretation. *Id.* at 821. The parties' intentions are inferred from the "clear and explicit" meaning of these provisions. *Id.* at 822. The provisions are interpreted in their "ordinary and popular" sense unless the terms are used in a "technical sense or a special meaning is given to them by usage." *Id.* A policy provision is considered ambiguous when it is capable of more than one interpretation. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). When ambiguity in policy language or term arises, courts must resolve that ambiguity in favor of the insured. *United Nat. Ins. Co. v. Spectrum Worldwide Inc.,* 555 F.3d 772, 777 (9th Cir. 2009). The language of a contract must be interpreted as a whole, which means ambiguities cannot be found in the abstract. *Waller*, 11 Cal. 4th at 18. "Courts will not strain to create an ambiguity where none exists." *Id.* at 18-19.

"[T]he burden is on the insured to bring the claim within the basic scope of coverage, and (unlike exclusions) courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage." *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (1994); *see also Waller*, 11 Cal. 4th at 16. As for policy exclusions, they are strictly construed against the insurer, and exceptions to exclusions are broadly construed in favor of the insured. *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 471 (2004) (citing cases). The burden falls upon the insurer "to phrase exceptions and exclusions in clear and unmistakable language." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (quotation marks omitted). An exclusion precludes coverage only if it is "conspicuous, plain and clear." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 201-02 (1973)).

Case No. 17-cv-00646 NC 4

**B. The Disputed Policy Text**

The insurance policy at issue here provides the following: "We will pay those sums that the insured becomes legally obligated to pay as 'damages' because of any 'claim' arising from a 'wrongful act' to which this insurance applies. The 'wrongful act' must take place: a. During the policy period; and b. In the 'coverage territory.'" Dkt. No. 29-1 at 88. The terms in the coverage provision are defined as follows:

> C. "Claim" means a:
>   1. Written demand for money resulting from a "wrongful act"; or
>   2. "Suit" resulting from a "wrongful act."
> . . . .
> F. "Damages" means the monetary portion of any judgment, award or settlement, provided such settlement is negotiated with our assistance and approval. "Damages" do not include:
> . . . .
>   2. Personal profit or advantage to which the insured is not legally entitled;
>   3. Criminal or civil fines, penalties (statutory or otherwise), fees or sanctions . . . .
> . . . .
> I. "Employee" includes but is not limited to a 'leased worker' and a "staffing services worker".
> . . . .
> Q. "Staffing services" means services provided by a staffing company to their clients including but not limited to:
> . . . .
>   7. Services performed for a client company to supply that client with a "staffing services worker."
> R. "Staffing services worker" means a person who is furnished by you to your client to perform the duties to which you have agreed.
> . . . .
> V. "Wrongful act" means any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing "staffing services" to your clients by you or by any person for whose acts you are legally responsible.

*Id.* at 95-98. In relevant part, the policy provides the following exclusions:

> This insurance shall not apply to any "claim", based upon or arising out of, in whole or in part:
>   A. Any action made by or on behalf of another insured, in any capacity.
> . . . .
>   I. Any liability assumed by an insured under any contract or agreement, unless such liability would have attached to the insured by law in the absence of such contract or agreement.

Case No. 17-cv-00646 NC   5

*Id.* at 90, 91.[1]

## C. Construction of "Wrongful Act"

In both motions, the parties dispute whether the allegations in the underlying class action litigation fall under the policy's coverage of "wrongful acts." The meaning of "wrongful act" is key in this case because if there is no "wrongful act" within the meaning of the policy, Zurich is not required to provide coverage.

### 1. No "Wrongful Act" As Defined in the Policy Was Committed.

WGH argues that the plain meaning of "wrongful act" requires that the Court find that coverage is due. Under the policy, "wrongful act" means "any actual or alleged act, error, or omission, misstatement, or misleading statement in the course of providing 'staffing services' to your clients by you or by any person for whose acts you are legally responsible." Dkt. No. 29-1 at 98. WGH asserts that the claims in the underlying litigation relating to unpaid wages constitute "wrongful acts." Dkt. No. 29 at 13.

Zurich counters that neither the claims in the underlying litigation nor the settlement is covered "because the obligation to pay the claimants' wages preexisted and is independent of any 'wrongful act' by WGH." Dkt. No. 32 at 8. At first blush, it appears that WGH's argument is the more meritorious. After all, failure to pay wages would be considered by any layperson an error or omission. Nonetheless, the law on this point favors Zurich.

"[A]n insured's alleged or actual refusal to make a payment under a contract does not give rise to a loss caused by a wrongful act." *August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co.*, 146 Cal. App. 4th 565, 578 (2007); *accord Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 253 (2012). In *Health Net*, for example, the insurer Health Net was required to pay benefits under the insureds' plans. The court found that because Health Net was "contractually obligated to pay its participants and

---

[1] The policy contains an "Additional Insured Endorsement With Insured Versus Insured Exception," which is not relevant here because the endorsement merely makes two exceptions to the exclusions which are not at issue here. Dkt. No. 29-1 at 99.

Case No. 17-cv-00646 NC  6

beneficiaries the full benefits to which they were entitled under their health plans," Health Net's costs in paying these benefits could not be passed on to its insurer "simply because [it] may have committed a wrongful act in its failure to pay them." *Health Net*, 206 Cal. App. 4th at 253.

So too here. WGH was required to pay employees' wages. WGH has never claimed that no employment contract existed between itself and the plaintiffs in the underlying litigation, and indeed concedes that at least oral contracts existed with the plaintiffs. Dkt. No. 29 at 19 ("There are no allegations that WGH assumed liability for these specific obligations *in its general oral employment contracts with class members*." (emphasis added)). The claims under the Labor Code and Industrial Welfare Commission Orders would not exist but for an employment contract. The plaintiffs in the underlying litigation alleged that WGH failed to pay wages. This alleged failure is not insurable through the Zurich policy.[2] WGH has not met its burden to show it was entitled to coverage. *Collin*, 21 Cal. App. 4th at 803. Thus, the Court GRANTS Zurich's motion for summary judgment on the first (breach of contract, second (breach of contract/duty to defend), and fourth (declaratory relief) claims for relief.

In addition, in its motion for summary judgment, Zurich argues that WGH's third claim for bad faith/breach of the implied covenant of good faith and fair dealing claim fails because no coverage is due under the policy. Dkt. No. 32 at 18. The Court agrees. Zurich cannot, as a matter of law, be held liable for bad faith if it was not obligated to cover the

---

[2] The parties dispute whether the acts at issue in the underlying litigation relate to staffing services performed for WGH's clients. The Court agrees with WGH that the acts relate to staffing services performed for clients. The definition of "wrongful act" states that the wrongful acts must be committed "in the course of providing 'staffing services' to your clients . . . ." Dkt. No. 29-1 at 98. "Staffing services" are, among other things, "[s]ervices performed on behalf of your client by a 'staffing services worker' . . . ." *Id*. at 97. A "staffing services worker" is a person furnished by WGH to the client to "perform the duties to which" WGH agreed. *Id*. When read together, the policy language is broad in coverage, and the phrase suggesting the acts in the underlying litigation should be covered is "in the course of." Broadly construed, the plaintiffs' unpaid training sessions and drives to deliver timesheets for time worked for WGH's clients should be considered work they performed "in the course of" providing "staffing services" to WGH's clients. This finding is secondary, however, because absent a "wrongful act," there can be no coverage.

Case No. 17-cv-00646 NC 7

underlying litigation in the first place. *Waller*, 11 Cal. 4th at 36. The Court also GRANTS Zurich's motion for summary judgment as to the third claim.

Though the Court GRANTS Zurich's motion for summary judgment on all of the claims, the Court also address the parties' other arguments in their cross motions.

### D. The Insured v. Insured Exclusion Does Not Preclude Coverage.

The parties dispute whether the following exclusion bars coverage: "This insurance shall not apply to any 'claim', based upon or arising out of, in whole or in part: A. Any action made by or on behalf of another insured, in any capacity." Dkt. No. 29-1 at 90. One of the definitions of an insured is "your 'employees.'" *Id*. There are other types of individuals that are considered "insureds," but this is the only one that matters here. Importantly, at no time does the policy state that "former employees" are insureds. It is Zurich's failure to include "former employees" as insureds that WGH cites to in arguing that the exclusion does not apply here, as both Robledo and Isquierdo are former WGH employees. Dkt. No. 29 at 15.

WGH strengthens its argument that former employees are not covered by the exclusion by citing to the definition of "Wrongful Employment Act," in which the policy explicitly distinguished between former and current employees: "W. 'Wrongful employment act' means: Your 'employee's', former 'employee's', or an employment applicant's allegation of: a. 'Discrimination' by an insured . . . ." Dkt. No. 29-1 at 98. Per WGH, this requires that the Court find that former employees were not excluded from coverage, because to do otherwise would render the word "former" surplusage in the policy. Dkt. No. 29 at 15-16.

Among other things, Zurich argues that the exclusion does apply because the policy was written on an occurrence basis, meaning that "the policy only covers those wrongful acts that occur during the policy period, regardless of when the claim was made." Dkt. No. 32 at 14. WGH agrees that the policy is an occurrence-based policy, but asserts that this fact does nothing to change the definition of an insured because the definition of insured is unambiguous and Zurich cannot now escape what its own policy says. The Court

Case No. 17-cv-00646 NC         8

1 considers the policy language ambiguous because the policy *is* occurrence-based, but the text of the policy suggests the exclusion only applies to claims made by "employees," not former "employees." WGH's argument as to the text of the policy makes sense, but so does Zurich's argument regarding the context of the policy. This ambiguity must by law be resolved in the insured's favor where the insurer did not make exclusions clear. *MacKinnon*, 31 Cal. 4th at 648. This exclusion is inapplicable here.

### E. The Facts Presented Do Not Show That Zurich "Waived" Its Right to Object to the Settlement.

The parties dispute whether Zurich waived its right to object to the settlement. The Court is persuaded that *if* Zurich refused to assume WGH's defense in the underlying litigation, Zurich "waived" its right to object to the settlement in the underlying litigation. *Diamond Heights Homeowners Assn. v. Nat'l Am. Ins. Co.*, 227 Cal. App. 3d 563, 581 (1991); *Risely v. Interinsurance Exch. of Auto. Club*, 183 Cal. App. 4th 196, 210 (2010). Though the Court recognizes that many California courts have not agreed with *Diamond Heights*, the Court notes that many courts *have* agreed with it, and that the Ninth Circuit earlier this year found no evidence that the California Supreme Court would not follow *Diamond Heights*' reasoning. *Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 851 F.3d 976, 982-86 (9th Cir. 2017).[3]

However, the applicability of the *Diamond Heights* rule is questionable here. There is a dispute between the parties regarding whether Zurich can be said to have "waived" its right to object to the settlement because it provided a defense in the underlying litigation. Dkt. No. 32 at 19. Similarly, Zurich argues that there is no evidence WGH ever even sought its approval of the settlement. *Id*. WGH concedes that Zurich provided "limited defense fees," but that the defense was under a different coverage part. Dkt. No. 34 at 19.

---

[3] The Court notes that the *Diamond Heights* decision dealt with an excess insurer. Yet the reasoning in *Diamond Heights*, as recognized by *Teleflex*, relies strongly on the fact that the insurer had breached its duties under the policy by failing to fulfill its obligations to the insured. 851 F.3d at 985 ("notwithstanding the court's use of the word "waiver" in *Diamond Heights*, the rule is not so much about the waiver of an insurer's contractual right than it is about an insurer's breach of a contractual obligation.").

Case No. 17-cv-00646 NC 9

1   On the other hand, Zurich argues that no discovery has been completed regarding the
2   defense provided by Zurich in the underlying litigation. Dkt. No. 35-1 at 2 (Bertschi
3   Decl.). These factual disputes necessitate a finding that summary judgment is not
4   appropriate on the issue of whether Zurich waived its right to consent. Given that the
5   Court is finding that no coverage was due in the first place due to a lack of a "wrongful
6   act," this finding is, in any event, secondary.

### F. The Contract Exclusion Bars Coverage.

The policy states that Zurich need not cover "any 'claim', based upon or arising out of, in whole or in part: I. Any liability assumed by an insured under any contract or agreement, unless such liability would have attached to the insured by law in the absence of such contract or agreement." Dkt. No. 29-1 at 91. WGH argues that this exclusion does not apply because the Labor Code and IWC Wage Order claims attached to WGH by law, regardless of any contract. Dkt. No. 29 at 19. Zurich counters that none of the claims against WGH would exist absent an employment contract, so the exclusion applies.

Zurich offers *Medill v. Westport Ins. Corp.* to support its argument. 143 Cal. App. 4th 819 (2006). In *Medill*, the relevant dispute revolved not around an exclusion, but whether the claims fell within the policy's coverage provision. *Id*. at 829. The court found the claims did not because the underlying litigation in that case arose out of a breach of contract (failure to perform contractual obligation to repay bonds), even if none of the causes of action were for "breach of contract." *Id*. The relevant policy language in *Medill* defined the word "loss," and stated that "loss" would not include "Damages 'arising out of' breach of any contract . . . ." *Id*. In examining what was excluded from "loss," the court there found:

> California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship. *Such language requires the court to examine the conduct underlying*

Case No. 17-cv-00646 NC            10

>                             *the . . . lawsuit, instead of the legal theories attached to the
>                             conduct.*

*Id.* at 830 (quoting *Acceptance Ins. Co. v. Syufy Enterprises*, 69 Cal. App. 4th 321, 328 (1999) and *Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.*, 42 Cal. App. 4th 121, 127 n.4 (1996)) (emphasis added) (internal quotation marks and brackets omitted). As a result, the *Medill* court concluded that the liability of the defendants in the underlying litigation "would not exist without the contracts," and that '[a]ll of the allegations against the [defendants] arise out of duties and obligations [the defendants] assumed under the bond contracts." *Id*.

WGH relies on an order on a summary judgment motion out of this courthouse, *Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, to support its argument. No. 14-cv-03286 BLF, 2016 WL 3951660 (N.D. Cal. July 22, 2016). However, the reasoning in *Ironshore* does not apply here because the policy language in this case is materially different than that in *Ironshore*. In *Ironshore*, the policy language provided that the exclusion applied to "Your assumption of liability or obligations in a contract or agreement. This exclusion does not apply to liability or obligations: a. that you would have in the absence of the contract or agreement[.]" 2016 WL 3951660, at *3.

The exclusion here applies to "*Any* liability assumed by an insured under *any* contract or agreement, unless such liability would have attached to the insured by law in the absence of such contract or agreement." Dkt. No. 29-1 at 91 (emphasis added). In *Ironshore*, Judge Beth Freeman clearly distinguished between the language in *Medill* and the language in front of the court there, which did not include the word "any" anywhere in the exclusion language. *Ironshore*, 2016 WL 3951660, at *4. The court in *Ironshore* then went on to analyze the rest of the exclusion language in that clause, and ultimately denied the insurer's motion for summary judgment on the basis of the contract exclusion clause. *Id*. at *4-*7. This further analysis is not warranted here.

Here, the Court finds Zurich has the more persuasive argument, and that *Medill* is on point. In the policy, the phrase "arising out of" connotes a broad definition for the type of contract that will be excluded from coverage, as does the extension of the contract

Case No. 17-cv-00646 NC        11

exclusion to "[a]ny liability assumed by an insured under any contract . . . ." Dkt. No. 29-1 at 91. This case is different than *Medill* in that *Medill* dealt with the scope of the coverage provision, and this case deals with the scope of an exclusion to coverage. The upshot of this difference is that the burden is on *Zurich* and not WGH to show its interpretation of the exclusion is correct. *MacKinnon*, 31 Cal. 4th at 648. The Court finds Zurich's argument more persuasive, even with the burden resting on Zurich. *E.M.M.I.*, 32 Cal. 4th at 471. Absent an employment contract between the class plaintiffs and WGH, this case would not exist.

Lastly, the parties also dispute whether the exception to the exclusion applies here. The exception excepts from the exclusion such liability that "would have attached to the insured by law in the absence of such contract or agreement." *Id*. As summarized above, WGH argues the exception applies because adherence to the Labor Code and IWC Wage Orders are required by law, regardless of any contract. While that contention is true, it is also true that the alleged Labor Code and IWC Wage Order violations would not exist absent an employment contract. These claims arise directly from the employment relationship. WGH's argument is unavailing. Thus, the Court finds the contract exclusion applies, and GRANTS Zurich's motion for summary judgment on this issue as well.

**G. The Settlement Does Not Constitute "Damages."**

The parties dispute whether the settlement constitutes "damages" under the policy. The policy provides that Zurich "will pay those sums that the insured becomes legally obligated to pay as 'damages' because of any 'claim' arising from a 'wrongful act' to which this insurance applies." Dkt. No. 29-1 at 88. "Damages" are "the monetary portion of any judgment, award or settlement, provided such settlement is negotiated with our assistance and approval. "Damages" do not include: . . . 2. Personal profit or advantage to which the insured is not legally entitled; [and] 3. Criminal or civil fines, penalties (statutory or otherwise), fees or sanctions . . . ." *Id*. at 96.

WGH asserts the settlement entered into with the *Robledo* and *Isquierdo* class constitutes coverable "damages." Dkt. No. 29 at 19. WGH also argues that even if the

Case No. 17-cv-00646 NC 12

settlement does not constitute damages, but rather wages and penalties, this would create a conflict in the policy language, which must be resolved in WGH's favor. *Id.* at 20. Zurich disagrees, arguing that the settlement constitutes wages, interest, and civil penalties, which are excluded as damages in its definition. Dkt. No. 32 at 12.

WGH admitted no liability in the underlying litigation. However, the plain language of the settlement agreement demonstrates that the manner in which the settlement proceeds were allocated precludes the settlement being considered "damages" under the policy. The settlement agreement provides: "the Parties have determined that all settlement payments to an Eligible Class Member will be designated as payment for and allocated as follows: (1) 40% wages; (2) 20% interest; and (3) 40% civil penalties for each settlement payment installment." Dkt. No. 29-1 at 268 (settlement agreement in the underlying litigation). Contrary to WGH's argument, the Court finds no evidence from the plain text of the settlement agreement that the allocation of the settlement into these different buckets was for tax reasons alone. Thus, the 80% of the settlement constituting wages and civil penalties fall squarely into what is excluded from the definition of "damages" in the policy. As for the interest owed, the Court also finds it is excluded from "damages." It would make very little sense for the Court to consider wages and civil penalties as excluded from the definition of "damages" only to find that the interest incurred as a result of the unpaid wages *was* considered damages.

Second, the parties dispute whether the policy language is ambiguous. The Court does not find the policy language ambiguous, and finds that WGH's interpretation of how such a purported ambiguity should be reconciled is strained. Dkt. No. 34 at 16; *Waller*, 11 Cal. 4th at 18-19 ("Courts will not strain to create an ambiguity where none exists."). As relevant here, the policy provides that settlements are covered as damages unless the purported damages are for personal profit or advantage which the insured is not legally entitled to or criminal or civil fines, penalties, fees, or sanctions. The Court finds this is the only reasonable interpretation of the disputed language.

Case No. 17-cv-00646 NC 13

### H. The Court Need Not Reach the Other Arguments In Zurich's Motion.

Zurich's last argument is that there remain numerous factual questions to be resolved by trial, and so summary judgment against it would be inappropriate if the Court was inclined to deny its motion as to the coverage issues. Dkt. No. 32 at 18-20. Given that the Court has found summary judgment in Zurich's favor merited on the coverage issue, the Court declines from reaching the factual issues.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Zurich's motion for summary judgment. The Court grants summary judgment to Zurich as to each claim in WGH's complaint. WGH's motion for partial summary judgment is DENIED except as to the insured v. insured exclusion. The insured v. insured exclusion to coverage is inapplicable in this case. Yet because this issue has no bearing on the question of coverage, this finding has no effect on the overall outcome of this case. Zurich is not obligated to cover WGH's settlement in the underlying litigation because the claims against WGH and the settlement do not fall within the basic coverage provision of the policy. The clerk of the court will enter judgment accordingly.

**IT IS SO ORDERED.**

Dated: August 31, 2017

_____
NATHANAEL M. COUSINS
United States Magistrate Judge